## THE ENTERPRISE.

(District Court, W. D. Pennsylvania. November 1, 1901.)

### No. 3.

**1. ADMIRALTY—FIREMEN—EMPLOYMENT—SERVICES REQUIRED.**
Where firemen employed on a steamer voluntarily accompanied her after she was ordered by her owners to the assistance of wrecked coal barges, and their services as firemen of the steamer were not required while the vessel was engaged in raising coal from the barges, and all hands on the steamer worked for several days in raising the sunken coal except the steamer's engineer and the firemen, who refused to fire the coal digger as directed by the captain, whereupon they were paid off the proportionate amount of their wages due, discharged, and put on shore, and it appeared customary, in cases of trouble, for the entire crew, regardless of position, to assist in saving property, the captain was warranted in requiring the firemen to fire the digger and in discharging them for their refusal.

In Admiralty.

Albert York Smith, for libelant.
C. G. McIlvain, for respondents.

BUFFINGTON, District Judge. The proofs in this case show that the intended destination of the boat was not known when these libelants were hired as firemen, but that they were hired for a prospective trip at the rate of $60 per month. The boat went to Louisville, Ky., and started with a tow on her return trip to Pittsburg. At Parkersburg, W. Va., she received orders to go to the assistance of some coal barges belonging to her owners, which barges were lying at Blennerhasset Island, about a mile and a half below. The Enterprise took in tow at Parkersburg a steam digger used for raising coal, and dropped down to the wreck, leaving her tow at the head of Blennerhasset Island. The digger had an engineer, but no fireman. The libelants knew at Parkersburg the object of the Enterprise in going back, and voluntarily accompanied her. When the wreck was reached, the digger, lashed to the Enterprise, was set to work raising the coal on the sunken barges. With the exception of the engineer of the Enterprise, whose service was not required, and the two libelants, all hands set to work and spent several days in working the digger and raising the

sunken coal. The Enterprise then proceeded with her tow to Pittsburg. The two libelants, when directed by the captain to fire the digger, refused to do so. They were then paid off the proportionate amount due them, discharged, and put on shore. They walked to Parkersburg, a mile and half distant, and returned to Pittsburg by train. They sue for wages up to the return of the boat and return car fare. The case turns on the question whether the captain's order for them to fire on the digger was unreasonable. If it was not, their refusal to comply warranted their discharge. We think, under all the facts, such order was not unreasonable. The Enterprise went to the relief of property owned by her owners. During the time she was aiding in raising the coal the libelants would not have to perform their ordinary duties as firemen. The work they were asked to do was of the same character as their regular work. The transfer to the digger was not permanent. It was but for a short time, and was something that, in the course of things, may fairly be regarded as incident to their employment as firemen. The captain testifies it was customary, "in case of trouble of any description, for the whole crew, regardless of his position, captain and steward not excepted, to do what they can to turn in and save property." That the rest of the crew took this view, and so worked for several days, shows this to be the general standard of duty. Under the circumstances the captain was justified in discharging the libelants. Russell v. The Twilight (D. C.) 43 Fed. 320.

Let a decree be drawn dismissing the libel.